## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Zurich American Insurance Company,

*Plaintiff*,

vs.

CASE NUMBER: 1:18-cv-932

Covil Corporation; Sentry Casualty
Company; United States Fidelity And
Guaranty Company; TIG Insurance Company,
As Successor In Interest To Fairmont
Specialty Insurance Company, F/K/A Ranger
Insurance Company; Hartford Accident And
Indemnity Company; Ann Finch, as Executrix
of the Estate of Franklin Delenor Finch;
Darrell A. Connor, as Executrix of the Estate
of Charles Franklin Connor; Robert A.
Mullinax, as Executor of the Estate of Jack
Junior Waugh; Robert Joseph Ellis; and
Sharon Whitehead, as Executrix of the Estate
of James T. Whitehead,

*Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF THE RECEIVER
## OF COVIL CORPORATION'S MOTION TO DISMISS OR STAY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 5

ARGUMENT ....................................................................................................................... 7

I.  The Court Should Dismiss This Action Because Zurich Failed To Join Necessary And Indispensable Parties And Because The Court Lacks Diversity Jurisdiction When The Necessary And Indispensable Parties Are Joined And The Parties Are Properly Aligned ............................................................................................................. 7

    A.  This suit should be dismissed because the Receiver is an indispensable party and was not joined in this case ...................................................................... 7

    B.  The South Carolina asbestos claimants are also necessary and indispensable parties in this case ............................................................................ 8

    C.  When and If Joined, The Parties Should Be Properly Aligned, With The Receiver As The True Party Plaintiff And All Other Parties, Including The South Carolina Asbestos Claimants, As Defendants ............................................ 12

II. This Court Should Also Dismiss Or, Alternatively, Stay This Action Under the Declaratory Judgment Act And The *Colorado River* Doctrine ........................................ 14

    A.  This Court should exercise its substantial discretion to decline jurisdiction under the Declaratory Judgment Act in favor of the more comprehensive South Carolina proceeding .................................................................................... 14

        1.  South Carolina has a strong interest in deciding the issues ..................... 15

        2.  South Carolina can resolve the issues efficiently and completely ........... 16

        3.  The potential for conflicting outcomes in this case and in South Carolina creates unnecessary "entanglement" between this Court and the South Carolina Action ................................................................. 16

        4.  This case is the product of forum-avoidance ........................................... 17

    B.  This Court Should Stay This Action Under the *Colorado River* Doctrine .......... 18

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alfa Laval, Inc. v. Travelers Cas. & Sur. Co.*,
   Civ. A. No. 3:09CV733-HEH, 2010 WL 2293195 (E.D. Va. June 3, 2010)...........................16

*Bates v. S.C. Nat'l Bank*,
   280 S.C. 599, 313 S.E.2d 361 (S.C. Ct. App. 1984)..................................................................6

*Beaufort Dedicated No. 5 Ltd. et rel. Syndicate 1318 at Lloyd's v. Bradley*,
   No. 1:11–CV–673, 2012 WL 3260325 (M.D.N.C. Aug 8, 2012)…………...........................19

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976).............................................................................................14, 18, 19, 20

*Covil Corp. v. Zurich Am. Ins. Co., et al.*,
   No. 7:18-cv-03291-BHH (D.S.C.)....................................................................................1, 7, 9

*Great Am. Ins. Co. v. Gross*,
   468 F.3d 199 (4th Cir. 2006) .....................................................................15, 16, 18, 19

*Int'l Shoe Co. v. U.S. Fid. & Guar. Co.*,
   186 S.C. 271, 195 S.E. 546 (S.C. 1938) ..............................................................6, 12, 13

*Kirven v. Lawrence*,
   244 S.C. 572, 137 S.E.2d 764 (S.C. 1964) ..............................................................................6

*Kramer v. City of Lake Oswego*,
   No. 3:12–cv–00927–HA, 2012 WL 4863214 (D. Ore. Oct. 11, 2012) ...................................11

*Mitcheson v. Harris*,
   955 F.2d 235 (4th Cir. 1992) ..........................................................................................15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)....................................................................................................................19

*N. Pac. Seafoods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   No. C06-795RSM, 2008 WL 53180 (W.D. Wash. Jan. 3, 2008) ...........................................20

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,
   416 F.3d 290 (4th Cir. 2005) .................................................................................................15

*Peurifoy v. Gamble*,
   143 S.C. 1, 142 S.E. 788, 71 A.L.R. 783 (S.C. 1928) .............................................................6

# TABLE OF AUTHORITIES
(continued)

*Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*,
 No. 11 CV 5624(HB), 2012 WL 832562 (S.D.N.Y. Mar. 13, 2012) ......................................20

*Riley v. Dozier Internet Law, PC*,
 371 Fed. Appx. 399 (4th Cir. 2010)........................................................................................15

*Royal Indem. Co. v. Apex Oil Co.*,
 511 F.3d 788 (8th Cir. 2008) ..................................................................................................14

*Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*,
 36 F.3d 1274 (4th Cir. 1994) ..................................................................................................11

*Sto Corp. v. Lancaster Homes, Inc.*,
 11 Fed. Appx. 182 (4th Cir. 2001)..........................................................................................19

*U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*,
 48 F.3d 131 (4th Cir. 1995) ..............................................................................................12, 13

*U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*,
 839 F. Supp. 347 (D. Md. 1993)..............................................................................................12

*Wilton v. Seven Falls Co.*,
 515 U.S. 277 (1995)......................................................................................................14, 16, 17

**Statutes**

28 U.S.C. § 1332....................................................................................................................3, 6

South Carolina Code § 15-65-10 ...................................................................................1, 3, 5, 13

## INTRODUCTION

On November 2, 2018, the Receiver, Peter D. Protopapas ("Receiver"), was appointed by the South Carolina Court of Common Pleas, pursuant to South Carolina Code § 15-65-10, to fully administer all of Covil's assets and liabilities. The Court of Common Pleas for the Fifth Judicial Circuit of the State of South Carolina appointed and vested the Receiver "with the power and authority to fully administer all assets" of Covil, including but not limited to "the right and obligation to administer any insurance assets of Covil Corporation as well as any claims related to the actions or failure to act of Covil's insurance carriers." Attached as Exhibit 1 is the Order Appointing A Receiver for Covil Corporation in Case No. 2018-CP-40-04940 ("Receiver Order") at 1.

In order to fully administer Covil's assets pursuant to South Carolina Code § 15-65-10, the Receiver has determined the need to litigate with certain of Covil's insurers, including plaintiff Zurich American Insurance Company ("Zurich"), and manage and defend claims asserted by underlying asbestos claimants that could affect Covil's assets. All of the insurers are adverse to the Receiver because the insurers claim that their relevant policy limits are aggregated and potentially exhausted, were not issued, or otherwise exclude coverage for the asbestos suits. All of the asbestos claimants are adverse to the Receiver because all of them are seeking millions of dollars in damages.[1] It is uncontroverted that Covil is a dissolved South Carolina corporation. Covil has had no officers, directors or employees for years, indeed decades. Zurich and two other insurers – Sentry Casualty Company ("Sentry") and United States Fidelity and Guaranty Corporation ("USF&G") – have in essence been running Covil's defense for years, with no

---

[1] Zurich, the plaintiff in this case, has alleged that its policies are exhausted and that it has no further obligation to Covil or any of the asbestos claimants. Zurich, and certain other insurers, prior to the appointment of the Receiver, effectively controlled Covil.

1

actual or apparent authority to do so. These insurers have also accepted liability for Covil's asbestos suits, apparently treating these suits in the nature of direct actions by the claimants, since Covil's ability to sue or be sued or to make any claims decisions was controlled completely by these insurers until appointment of the Receiver on November 2, 2018. The Receiver is an indispensable party. The Receiver is the sole person who can, as of November 2, 2018, act on behalf of Covil. The Receiver was not named in this case as a party.

Instead, *four days* after the South Carolina state court appointed the Receiver to pursue "any claims related to the actions or failure to act of Covil's insurance carriers," Zurich filed this declaratory judgment action in this Court on November 6, 2018, against Covil, Covil's other insurers, and certain underlying North Carolina asbestos claimants, one of whom – Ann Finch, Executrix of the Estate of Franklin Delenor Finch – holds a trial court verdict in excess of $32,000,000.

Promptly thereafter, on November 21, 2018, the Receiver filed a far more comprehensive action against the Covil insurers, including Zurich, and certain underlying South Carolina asbestos claimants, in the Court of Common Pleas, Seventh Judicial Circuit, County of Spartanburg, South Carolina (the "South Carolina action"). A copy of the Receiver's complaint is attached as Exhibit 2.

The Receiver's South Carolina action is far more comprehensive than this suit. In the South Carolina action, the Receiver seeks relief regarding the same insurance policies that Zurich addresses in this lawsuit. However, in South Carolina, the Receiver also seeks damages for

2

breach of contract and bad faith against Zurich and other Covil insurers.[2]  In addition, the

Receiver's complaint in South Carolina seeks to fulfill the Receiver's statutory functions under

South Carolina law by obtaining declarations against the underlying South Carolina asbestos

claimants.  In particular, the Receiver seeks the following declarations against the underlying

asbestos claimants' interests: "Covil seeks a declaration and order that certain rights and interests

of the individually-named defendants be limited and curtailed as follows: (i) that any judgment

obtained against Covil in a Covil asbestos suit be limited to all sums that may be collected from

defendants Zurich, Sentry, USF&G, TIG, and Hartford, individually or collectively, (ii) that

punitive or exemplary damages are not awardable against the Receiver or the Receiver acting on

behalf of Covil pursuant to South Carolina Code 15-65-10; . . . ."  (Ex. 2, Covil Compl. ¶ 70).

In this lawsuit, Zurich's complaint alleges that the basis of jurisdiction is diversity of

citizenship under 28 U.S.C. § 1332.  ECF No. 1 ¶ 12.  But complete diversity is lacking when all

necessary and indispensable parties (i.e., the Receiver, who is a resident of South Carolina, and

the South Carolina asbestos claimants) are joined and the parties are properly aligned, as they

must be.

The only *true* party that should be a plaintiff in this case is the South Carolina state-court-

appointed Receiver for Covil, Peter D. Protopapas.  The Receiver was appointed by the South

Carolina Court of Common Pleas.  Covil is a dissolved corporation.  It was dissolved over 25

---

[2] The South Carolina Action names as defendants the Covil insurers Zurich, Sentry, USF&G, TIG Insurance Company ("TIG"), Hartford Accident and Indemnity Company ("Hartford"), First State Insurance Company, as well as underlying South Carolina asbestos claimants Timothy W. Howe, personal representative of Wayne Erwin Howe; Jeannette Howe; Jerry Crawford, Denver Taylor, and Janice Taylor; and James Coleman Sizemore, personal representative of James Calvin Sizemore (collectively, the "South Carolina asbestos claimants").  On December 6, 2018, Sentry filed a notice of removal to the United States District Court for the District of South Carolina, Spartanburg Division.  On December 20, 2018, the Covil Receiver filed a motion to remand the South Carolina action back to the state court.  That motion is pending.

3

years ago.  The Receiver is seeking both to recover assets from insurance companies that have breached their contracts of insurance and to administer claims brought by bodily injury claimants that seek tens of millions of dollars.  This is a case involving South Carolina tort and contract law.  The relevant documents are in South Carolina.  The Receiver is in South Carolina and is an officer of a South Carolina court.  This case should be adjudicated in South Carolina because complete diversity of citizenship does not exist when all necessary and indispensable parties are joined and the parties are properly realigned.  Nor is this a case involving a federal question, but, rather, only matters governed by South Carolina law.  The Receiver therefore seeks to have this dispute litigated in South Carolina, where it belongs, and to conserve Covil's assets, which he is by statute and court-order charged with administering, by not having to litigate against Covil's insurers in multiple forums.  Zurich, like Covil's other insurers, is supposed to protect its insured's interests; but by its acts and deeds Zurich is doing the opposite.  Thus, the parties should be realigned to reflect the parties' true adversities.[3]  And it must be recognized that an indispensable party – the Receiver – was neither named nor properly aligned.

Once the parties are properly joined and aligned, the case must be dismissed because both the Receiver and the adverse South Carolina asbestos claimant defendants are all South Carolina citizens.[4]  Thus, without complete diversity between a proper plaintiff and all of the proper defendants, this Court lacks subject-matter jurisdiction.[5]

---

[3] There is no adversity, for example, between Zurich and its fellow insurers Sentry and USF&G which acted in concert to administer and pay for claims against Covil before the Receiver was appointed by the South Carolina Court of Common Pleas.

[4] *See* Ex. 2, Covil Compl. ¶¶ 12, 19-22.

[5] Zurich's claims in this lawsuit can be easily pleaded as counterclaims in the more comprehensive South Carolina action, where all issues raised by Zurich in this lawsuit, which are factually intertwined with the claims already pending in the South Carolina action, can be resolved in an efficient, complete, and consistent manner.

4

Alternatively, this Court should dismiss or stay the action *pendente lite* of the South Carolina litigation. The Receiver has filed a far more comprehensive action in South Carolina, where Covil was headquartered while it was in operation, and where many of the underlying asbestos claimants were allegedly injured. The Receiver is a South Carolina resident. The Receiver was appointed by a South Carolina court; the insurance policies were issued in South Carolina; and South Carolina law applies. South Carolina has a strong interest in determining the parties' rights; South Carolina courts are more capable of adjudicating disputes governed by South Carolina law; piecemeal litigation should be avoided; and Zurich should not be rewarded for its forum-avoidance strategy. Certainly, Zurich could have and should have availed itself of the jurisdiction provided by the South Carolina court that appointed the Receiver since, ultimately, the South Carolina court appointing the Receiver will need to determine whether the Zurich policy assets have been "fully administered." Zurich's deliberate avoidance of the South Carolina court *after* the South Carolina court appointed the Receiver is a powerful reason, standing alone, for granting this motion.

## FACTUAL BACKGROUND

Covil was long ago dissolved. The Receiver for Covil, Peter D. Protopapas, was appointed by the South Carolina Court of Common Pleas for the Fifth Judicial Circuit, pursuant to South Carolina Code § 15-65-10. Zurich then sued Covil Corporation. Despite the fact that the Receiver had been duly appointed before this suit was brought, Zurich failed to join the Receiver as a party and deliberately sought to avoid the South Carolina court that appointed the

Receiver. The Receiver is an indispensable party and is the only person duly authorized to act on Covil's behalf.[6]

Zurich, Sentry and USF&G, primary insurers of Covil – without any apparent or actual authority other than perceived or assumed obligations to asbestos claimants asserting claims in the nature of direct actions[7] – have been handling asbestos claims asserted against Covil, despite its dissolution. Prior to its dissolution and *de facto* administration by its insurers, Covil was a South Carolina-based installer of thermal insulation, including thermal insulation which contained asbestos. Exhibit 2 ¶ 1. It has been alleged that, during the conduct of its operations, i.e., in connection with the installation, repair, replacement, removal or disturbance of thermal insulation materials, persons were exposed to asbestos, thereby suffering bodily injury. Covil's operations that are the subject of these allegations took place beginning in or about 1964, extending to in or before 1986. *Id.* The alleged bodily injury took place during the periods 1964

_____

[6] Furthermore, at this point, the relief requested by Zurich can only be granted by the court appointing the Receiver. Generally, a receiver represents the court appointing him; "[he] is an officer of the court" and the agency "through which the court acts." *Peurifoy v. Gamble*, 143 S.C. 1, 142 S.E. 788, 790, 71 A.L.R. 783 (S.C. 1928); *Int'l Shoe Co. v. U.S. Fid. & Guar. Co.*, 186 S.C. 271, 195 S.E. 546, 550 (S.C. 1938); *Kirven v. Lawrence*, 244 S.C. 572, S.E.2d 764, 768 (S.C. 1964). As such, here, the Receiver is "an agent of the court" of South Carolina. *See Bates v. S.C. Nat'l Bank*, 280 S.C. 599, 313 S.E.2d 361, 361 (S.C. Ct. App. 1984).

[7] Zurich, Sentry and USF&G should be estopped from seeking to avoid jurisdiction by the South Carolina Court of Common Pleas. They have accepted, *de facto*, direct actions brought by asbestos claimants, including South Carolina claimants. This has jurisdictional implications. According to 28 U.S.C. § 1332:

> "(c) For the purposes of this section and section 1441 of this title –
> (1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, **except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of –**
>
> > **(A) every State and foreign state of which the insured is a citizen; . . ."**

28 U.S.C. § 1332(c) (emphasis added).

to 1986 and thereafter continued and progressed, resulting in suits asserted against Covil, including but not limited to suits asserted by South Carolina asbestos claimants.

Claimants have brought asbestos suits since Covil's dissolution in 1993, which suits Zurich, Sentry and USF&G have *de facto* treated as direct actions. In handling these claims, with no actual or apparent authority, and contrary to the policy provisions, Zurich apparently contends that payments made to resolve these past asbestos suits are covered under either the "products hazard" or the "completed operations hazard" portions of the policies and subject to the aggregate limits of liability therein. The Receiver disputes this assertion and contends that claims for asbestos-related bodily injury or death that arise from Covil's operations are covered under non-aggregated coverage parts of the policies. The Receiver also contends that purported exclusions for the products hazard or completed operations hazard do not apply to operations claims.

## ARGUMENT

I. **The Court Should Dismiss This Action Because Zurich Failed To Join Necessary And Indispensable Parties And Because The Court Lacks Diversity Jurisdiction When The Necessary And Indispensable Parties Are Joined And The Parties Are Properly Aligned.**

A. **This suit should be dismissed because the Receiver is an indispensable party and was not joined in this case.**

Covil Corporation was dissolved in 1993.[8] Peter D. Protopapas, the Receiver, was appointed on November 2, 2018, before this suit was brought. Leaving aside the implications of three primary insurance companies *de facto* assuming all of Covil's obligations to asbestos claimants as a matter of direct liability for a period of 25 years, after the Receiver was appointed the only person or party that may act on Covil's behalf is the Receiver. Zurich did not join the

---

[8] *Covil Corp. v. Zurich Am. Ins. Co., et al.*, No. 7:18-cv-03291-BHH (D.S.C. 2019), ECF No. 25-2; ECF No. 26-3.

Receiver in this case. The Receiver is a South Carolina resident and is treated as an officer of the South Carolina Court of Common Pleas. The Receiver objects to jurisdiction in this Court and also asserts that all disputes currently *sub judice* between and among the Receiver and Covil's insurers should be heard before the South Carolina Court of Common Pleas, which appointed the Receiver. Under Rule 19 of the Federal Rules of Civil Procedure, the Receiver is a necessary and indispensable party and, accordingly, not having been joined as a party, this action should be dismissed.

**B.    The South Carolina asbestos claimants are also necessary and indispensable parties in this case.**

In this suit, Zurich seeks declaratory relief against certain North Carolina asbestos claimants. ECF No. 1 ¶¶ 7-11. However, Zurich's suit should be dismissed pursuant to Rule 12(b)(7) because Zurich also failed to join the South Carolina asbestos claimants as defendants under Rule 19. *See* Fed. R. Civ. P. 12(b)(7) ("failure to join a party under Rule 19" constitutes grounds for dismissal).[9] The South Carolina asbestos claimants are necessary and indispensable parties to this litigation, but the Court does not have subject matter jurisdiction over Zurich's claims against the South Carolina asbestos claimants. Allowing Zurich to proceed without the South Carolina asbestos claimants will create a substantial risk of inconsistent rulings regarding Zurich's obligations, and will be judicially inefficient. Accordingly, the Court should dismiss this action so that Zurich's claims against the Receiver can proceed in South Carolina.

Rule 19(a)(1) provides that an absent party is necessary if:

(A)    in that person's absence, the court cannot accord complete relief among existing parties; or

---

[9] For example, South Carolina asbestos claimants Denver Taylor and Janice Taylor are citizens of the State of South Carolina, and parties in Case No. 2018-CP-40-0490 (the "*Denver Taylor* suit") pending in the Court of Common Pleas, Richland County, in which *a default judgment has been entered against Covil*. Ex. 2, Covil Compl. ¶21 (emphasis added).

8

(B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)     as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

In the South Carolina action, Zurich has already claimed that the South Carolina asbestos claimants have an interest relating to the subject of this action, thus conceding that they are a necessary party under Rule 19(a)(1)(B)(i) and (ii).  Specifically, Zurich has asserted that the South Carolina asbestos claimants have an interest in the Zurich insurance policies at issue:

[Covil] wishes to obtain as much money as possible from the insurer defendants, both pursuant to various insurance policies (including the Zurich policy) as well as through bad faith claims, and to control the manner in which the insurance policies are apportioned to any losses.  This money will then be used to pay the non-diverse, S.C. Defendants, who are underlying plaintiffs in litigation against Covil.  **The SC Defendants' sole interest in the underlying matter is to eventually be paid** [with insurance proceeds from Zurich] with respect to the same lawsuit.

*Covil Corp. v. Zurich Am. Ins. Co., et al.*, No. 7:18-cv-03291-BHH (D.S.C. Jan. 7, 2019), ECF No. 26 at 3 (emphasis added).

The South Carolina asbestos claimants' interest in the Zurich insurance policies, as alleged by Zurich itself in the South Carolina Action, make them required parties here under Rule 19(a)(1)(B).  However, joinder of the South Carolina asbestos claimants in this litigation is not feasible.  Zurich brings its claims in this case based on diversity jurisdiction.  Because the South Carolina asbestos claimants are citizens of South Carolina for purposes of the diversity statute, and the parties should be realigned with the Receiver (also a citizen of South Carolina) as the only true party plaintiff and all other parties, including the South Carolina asbestos claimants,

9

as the true defendants, as discussed below, the South Carolina asbestos claimants cannot be joined without destroying diversity.

Thus, since the South Carolina asbestos claimants are necessary parties but cannot be joined, and because the South Carolina proceeding can provide complete relief to Zurich, the Court should dismiss this action under Rule 19(b).

Rule 19(b) provides that, where joinder is not feasible, the court will look to the following four factors to determine whether an action should nonetheless proceed without a required absent party, or should be dismissed:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Here, these factors favor dismissal.

Without the South Carolina asbestos claimants as parties to this action, there is the potential for prejudice to those claimants. Moreover, it is not possible for the Court to craft relief regarding Zurich's declaratory judgment claims so as to avoid or lessen the possible prejudice to the South Carolina asbestos claimants that is almost certain to arise from the substantial risk of inconsistent results between this action and the pending South Carolina action. Zurich's declaratory judgment claims here are intertwined with the Receiver's declaratory judgment, breach of contract and bad faith claims in the South Carolina Action. The overlap in issues between the two actions militates in favor of dismissal. Fed. R. Civ. P. 19, Advisory Comm.

10

Notes (1966) ("[t]he interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter").

Finally, the South Carolina action provides an adequate forum for complete relief. Courts routinely dismiss cases where an absent party would destroy diversity and the Rule 19(b) factors favor dismissal. *See*, *e.g.*, *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1288 (4th Cir. 1994) (affirming dismissal of action for failure to join necessary and indispensable parties, the joinder of which destroys diversity jurisdiction); *Kramer v. City of Lake Oswego*, No. 3:12–cv–00927–HA, 2012 WL 4863214, at *4 (D. Ore. Oct. 11, 2012) (dismissing plaintiff's claim for failure to join necessary and indispensable party: "[m]ost important among the factors this court has considered is that in state court, there exists a perfectly capable forum, where all necessary parties may be joined, that can resolve the issues raised by this lawsuit in an efficient, complete and consistent matter").

Because the South Carolina asbestos claimants are necessary and indispensable parties that cannot be joined to this proceeding without destroying diversity, and because the South Carolina proceeding provides an adequate forum for delivering complete, consistent, and efficient resolution of all inter-related claims, this case should be dismissed in favor of the pending South Carolina action.

### C. When and If Joined, The Parties Should Be Properly Aligned, With The Receiver As The True Party Plaintiff And All Other Parties, Including The South Carolina Asbestos Claimants, As Defendants.

When determining the proper alignment of the parties to a dispute, "a federal court is not bound by the alignment of the parties in the pleadings. The court must determine for itself, as the interest of the parties appear, the proper alignment." *U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*, 839 F. Supp. 347, 349 (D. Md. 1993). Thus, "diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and

who are defendants." *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941).

The Supreme Court has set forth the standard that federal courts are to use when determining jurisdiction. In order to sustain diversity jurisdiction "there must exist an 'actual,' 'substantial' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *Id.* (citations omitted). "Whether the necessary 'collision of interest' exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" *Id.* (citations omitted). Courts in this Circuit, mindful of the limited grant of jurisdiction, have adopted the "primary purpose" test to determine if realignment of the parties is appropriate. *U.S. Fid. & Guar. Co. v. A & S Mfg. Co., Inc.*, 48 F.3d 131, 133-34 (4th Cir. 1995).

Application of the "primary purpose" test requires the Court to perform two tasks. It must first determine "the primary issue in controversy," and then "align the parties according to their positions with respect to the primary issue." *Id.* at 133. In order to determine the "primary purpose" of this action, Zurich's complaint must be analyzed.

Zurich's complaint seeks declarations establishing, among other issues, "the per-occurrence and aggregate limits for amounts to be paid on behalf to plaintiffs" for the underlying asbestos suits; an order relieving Zurich of any further duty to defend or indemnify under its policies; and a declaration and apportionment of amounts owed by Zurich, USF&G, Sentry and other insurers toward underlying asbestos suits. *See* ECF No. 1 at 11-12.

The primary purpose of this lawsuit is Zurich's challenge to the Receiver's statutory functions under South Carolina law, as ordered by the Honorable Jean H. Toal. The Receiver

12

was appointed under South Carolina Code § 15-65-10 to fully administer all assets of Covil Corporation, including the power and obligation to effectuate the defense of pending asbestos claims and to seek insurance proceeds. *See* Ex. 1, Order Appointing a Receiver for Covil Corporation at 1 (noting expressly that this order is "***not limited to*** . . . the right and obligation to administer any insurance assets of Covil Corporation as well as any claims related to the actions or failure to act of Covil's insurance carriers") (emphasis added). Zurich's complaint therefore seeks to limit the Receiver's statutory functions under South Carolina law by obtaining declarations against Covil, Covil's other insurers, and the underlying asbestos claimants.

On these primary issues, the Receiver's interests are diametrically opposed to those of Zurich and the asbestos claimants. Accordingly, because the interests of the Receiver are in absolute opposition to those of Zurich and the underlying asbestos claimants, this Court should realign the parties with the Receiver as the true party plaintiff.[10] Because complete diversity of citizenship is lacking to justify subject-matter jurisdiction when the parties are properly aligned, this case should be dismissed.

**II.     This Court Should Also Dismiss Or, Alternatively, Stay This Action Under the Declaratory Judgment Act And The *Colorado River* Doctrine.**

**A.     This Court should exercise its substantial discretion to decline jurisdiction under the Declaratory Judgment Act in favor of the more comprehensive South Carolina proceeding.**

The various disputes in this case involve South Carolina law and the order of a South Carolina state court. These matters should be resolved in South Carolina.

---

[10] The necessary and indispensable South Carolina asbestos claimants' interests in Covil's insurance coverage is merely hypothetical at this point; none of them has obtained liability judgments. The Fourth Circuit has made clear that hypothetical liability is an insufficient basis upon which to align the parties. *See generally U.S. Fid. & Guar. Co.*, 48 F.3d at 134 (refusing to align parties based on "hypothetical" adverse interests; holding that "[t]he dispute among the insurers is secondary to whether the insurers are liable to [the insured] and is hypothetical until the insurers' liability is determined").

13

Zurich seeks declaratory relief regarding Covil's insurance coverage. ECF No. 1 at ¶¶ 44-64. Under the Declaratory Judgment Act, this Court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942). In fact, "in a declaratory judgment action, a federal court has broad discretion to abstain from exercising jurisdiction even if there are no exceptional circumstances as articulated in *Colorado River*." *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)). This Court should exercise its substantial discretion to decline jurisdiction in this case because, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. Here, those considerations weigh in favor of declining federal jurisdiction.

In this Circuit, courts consider four factors in determining whether to decline federal jurisdiction under the Declaratory Judgment Act, asking whether:

(1)    The state has a strong interest in having the issues decided in its courts;

(2)    The state courts could resolve the issues more efficiently than the federal courts;

(3)    The presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and

(4)    The federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Riley v. Dozier Internet Law, PC*, 371 Fed. Appx. 399, 402 (4th Cir. 2010). This Court does not need to find that all four factors favor dismissal to decline jurisdiction. *See, e.g.*, *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297-98 (4th Cir. 2005) (affirming decision to decline jurisdiction based on an analysis of only two of the four factors); *Mitcheson*

14

*v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992) (reversing decision to exercise jurisdiction because two of the four factors weighed in favor of dismissal).  Nevertheless, all four factors indeed favor dismissal or a stay here.

### 1. South Carolina has a strong interest in deciding the issues.

The first factor supports dismissal because South Carolina has a strong interest in having the issue presented in this case decided in its courts.  As in *Mitcheson*, where the United States Court of Appeals for the Fourth Circuit *reversed* the district court's decision *not* to decline jurisdiction, "[a]ll questions in the declaratory action depend solely upon state [insurance] law." 955 F.2d at 238.   And, as the United States Court of Appeals for the Fourth Circuit explained in *New Wellington*, "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."  416 F.3d at 297 (quoting *Mitcheson*, 955 F.2d at 237).

South Carolina courts should be permitted to determine the law applicable in this case—especially because South Carolina courts apparently have yet to decide the issue of insurance law at the heart of this dispute.  That provides yet another reason why this Court should stay its hand in favor of the South Carolina Action.  *See generally Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006) (district courts may decline jurisdiction where there is an "unsettled" state-law question).

### 2. South Carolina can resolve the issues efficiently and completely.

The second factor—efficiency—also favors dismissal here because the primary insurance coverage claims in this case "can satisfactorily be adjudicated" in South Carolina.  *Id.* at 212 (quoting *Brillhart*, 316 U.S. at 495).  The same claims are at issue and the same insurance companies have been joined.  *See*, *generally*, The Receiver's South Carolina complaint attached as Exhibit 2.

15

Thus, there is no reason for this Court to devote its time and resources to adjudicating issues that can satisfactorily be adjudicated in the South Carolina Action.  *See Wilton*, 515 U.S. at 288 (explaining that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and *wise judicial administration*") (emphasis added).

### 3. The potential for conflicting outcomes in this case and in South Carolina creates unnecessary "entanglement" between this Court and the South Carolina Action.

In the absence of a dismissal or a stay, an unfortunate (and inefficient) race to res judicata between the parallel actions will inevitably occur—to no one's benefit, and certainly not in the interest of "wise judicial administration," which the United States Supreme Court has instructed is a key consideration in the analysis.  *Wilton*, 515 U.S. at 288.  That is precisely the sort of "entanglement" between courts at issue in the third factor—manifested by the potential for conflicting decisions—that the Fourth Circuit has considered as a reason to decline federal jurisdiction.  *See*, *e.g.*, *Mitcheson*, 955 F.2d at 239 (considering entanglement in insurance context).

Thus, in *Alfa Laval, Inc. v. Travelers Casualty and Surety Co.*, Civ. A. No. 3:09CV733-HEH, 2010 WL 2293195, at *4, (E.D. Va. June 3, 2010), the court declined to exercise jurisdiction (and instead stayed the case) because "[t]he potential exists for conflicting decisions with respect to not only scope of coverage and indemnity liability under the Travelers policy, but also the percentage of allocated obligation on the part of the other insurance carriers, individually and collectively."  Because the potential for similar conflict exists here as well on questions concerning the extent to which the insurers are obligated to defend and indemnity Covil against the asbestos suits, this Court should likewise decline to exercise jurisdiction.

### 4. This case is the product of forum-avoidance.

The South Carolina Court of Common Pleas appointed the Receiver. The Receiver is an officer of the South Carolina Court. Ultimately, in order for Zurich to get the relief it requests, it must satisfy the Receiver and the South Carolina Court of Common Pleas that its insurance policies have been "fully administered." That means appearing before the court that appointed the Receiver. Instead of bringing an action against the Receiver, in the court that appointed the Receiver, Zurich tried to manufacture jurisdiction in this Court. This type of forum-avoidance speaks forcefully as to why dismissal or stay is appropriate.

Zurich ran to a federal courthouse in North Carolina – *four days* after the Covil Receiver was appointed by the South Carolina state court – in an effort to obtain its preferred forum, or, more importantly, to avoid the South Carolina court that has the most substantial interest in the outcome of this case. There can be little question that they are the "product of forum shopping" or "forum avoidance" just the same. Federal jurisdiction should be declined for that reason, too. *See Wilton*, 515 U.S. at 280 (affirming district court's decision to stay federal suit, even though it was filed before state suit).

In sum, as all four factors point against exercising jurisdiction over this case, this Court should exercise its substantial discretion to dismiss this case in favor of the South Carolina Action (or at least to stay this action until the resolution of that proceeding).

### B. This Court Should Stay This Action Under the *Colorado River* Doctrine.

For many of the same reasons, this Court alternatively should abstain from exercising jurisdiction under the doctrine articulated by the Supreme Court in *Colorado River*. To be sure, "this form of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it'" and applies "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an

17

important countervailing interest." *Great Am.*, 468 F.3d at 207 (quoting *Colorado River*, 424 U.S. at 813). This case satisfies that standard because of the very real risk of prejudice if both this action and the South Carolina litigation are allowed to proceed.

As an initial matter, this case satisfies the threshold requirement for *Colorado River* abstention because the two actions at issue here are "parallel." As the United States Court of Appeals for the Fourth Circuit has explained, "[s]uits are parallel if *substantially* the same parties litigate *substantially* the same issues in different forums." *Id.* at 208 (emphasis added) (citation omitted). Here, the South Carolina litigation involves the same insurance companies and seeks declarations regarding the same insurance policy language. The threshold requirement for *Colorado River* abstention is therefore satisfied.

Second, the multi-factor test applied in this Circuit also points toward abstention:

(1)     Whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others;

(2)     Whether the federal forum is an inconvenient one;

(3)     The desirability of avoiding piecemeal litigation;

(4)     The relevant order in which the courts obtained jurisdiction and the progress achieved in each action;

(5)     Whether state law or federal law provides the rule of decision on the merits; and

(6)     The adequacy of the state proceeding to protect the parties' rights.

*Id.* at 207-08. Not all of these factors need favor abstention, and no one factor is determinative. *Colorado River*, 424 U.S. at 818-19; *see, e.g.*, *Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx. 182, 187-89 (4th Cir. 2001) (holding that district court did not abuse its discretion by abstaining where only three factors favored abstention).

18

There are abundant reasons why abstention is appropriate here: [11]

- The Receiver, Peter D. Protopapas, is a South Carolina resident;

- The Receiver is an officer of a South Carolina court under South Carolina law;

- This matter involves a dissolved South Carolina corporation;

- This matter involves, among other things, contracts issued/entered in South Carolina;

- This matter involves operations conducted in South Carolina;

- The matter invokes South Carolina law; and

- There is a pending more comprehensive case in South Carolina.

This case may also be stayed *pendente lite* of the South Carolina litigation and, if there is any remaining issue not resolved in South Carolina, the parties' rights will be protected.

In *Beaufort Dedicated No. 5 Ltd. et rel. Syndicate 1318 at Lloyd's v. Bradley*, No. 1:11–CV–673, 2012 WL 3260325, at *12 (M.D.N.C. Aug 8, 2012), the court held that declaratory claims regarding insurance coverage should be stayed under the *Brillhart/Wilton* doctrine. While the non-declaratory relief sought in that case was an independent claim for rescission, the court still held abstention was warranted under *Colorado River*. *Id.* at *8, 11. The court expressly held that: (i) proceeding in federal court could lead to piecemeal litigation; (ii) the state court action had progressed further than the first-filed federal action; (iii) state law governed the claims at issue; and (iv) the action filed in state court could protect the parties' rights. *Id.* at *10-12.

---

[11] Although Zurich may argue that it filed this federal case first in its race to the courthouse, Zurich failed to join the Receiver as a necessary party and thus its filing was defective. Accordingly, this case has no temporal filing priority. Furthermore, the Supreme Court has made clear that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983).

19

Accordingly, in the alternative to dismissing this case for lack of subject matter jurisdiction, and in the further alternative to declining jurisdiction under the Declaratory Judgment Act, this Court should abstain under the *Colorado River* doctrine. *See also Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, No. 11 CV 5624(HB), 2012 WL 832562 at *4 n.3 (S.D.N.Y. Mar. 13, 2012) (staying case under *Wilton/Brillhart* but noting "it is likely that the same result would follow" under *Colorado River*); *N. Pac. Seafoods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. C06-795RSM, 2008 WL 53180, at *5 (W.D. Wash. Jan. 3, 2008) (ordering stay under *Brillhart/Wilton* doctrine, but noting that even if non-declaratory claims were considered independent, stay of those claims would be appropriate under *Colorado River*).

## **CONCLUSION**

The Receiver respectfully requests that this Court dismiss or stay this case in favor of, or *pendente lite*, of the South Carolina litigation.

Dated: January 18, 2019

/s/ William K. Davis
William K. Davis
N.C. State Bar No. 1117
BELL, DAVIS & PITT, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4146
wdavis@belldavispitt.com


Paul Anton Zevnik (Pro Hac Forthcoming)
Nancy Patterson (Pro Hac Forthcoming)
W. Brad Nes (Pro Hac Forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000

*Attorneys for Covil Corporation, acting through Peter D. Protopapas, Receiver of Covil Corporation*

20

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the foregoing memorandum of law is less than 6,250 words (excluding caption and certificates of counsel) as reported by the word-processing software.

/s/ *William K. Davis*
William K. Davis
N.C. State Bar No. 1117
BELL, DAVIS & PITT, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4146
wdavis@belldavispitt.com

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing motion via the Court's electronic filing system, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This the 18th day of January, 2019.

/s/ *William K. Davis*
William K. Davis