# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

COVIL CORPORATION, by and through )
its duly appointed receiver,       )
Peter D. Protopapas,               )
                                   )
              Plaintiff,           )
                                   )
         v.                        )          1:18cv932
                                   )
United States Fidelity and         )
Guaranty Co.,                      )
                                   )
              Defendant.           )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "United States Fidelity and Guaranty Company's Motion to Compel Disclosure of Settlement Agreements" (Docket Entry 399) (the "Motion"). For the reasons that follow, the Court will grant the Motion in part, such that Covil Corporation ("Covil") must produce limited portions of its settlement agreement with Zurich American Insurance Company ("Zurich").

## BACKGROUND

As the Court (per United States District Judge Catherine C. Eagles) previously explained:

> For many years, Covil, a South Carolina corporation, sold and distributed insulation products, including products that contained asbestos. There are several personal injury suits against Covil in North and South Carolina relating to the distribution and/or installation of asbestos-containing products. At least two courts — this [C]ourt and a South Carolina state court — have entered judgments against Covil.

Covil was dissolved in 1993. It appears undisputed that Covil has no officers, directors, or employees capable of taking the actions required to obtain counsel or file or defend any lawsuit and that, until recently, three of Covil's insurers — Zurich, Sentry Casualty Company [("Sentry")], and United States Fidelity and Guaranty Company [("USF&G")] — controlled Covil's defense in any underlying asbestos litigation.

In October 2018, after a five-day trial in this Court, a jury awarded $32,700,000 [(the "Finch Judgment")] to . . . Ann Finch, executor of the estate of Franklin Finch, in a wrongful death suit against Covil [(the "Finch Action")]. The jury found that Mr. Finch developed mesothelioma as a result of exposure to asbestos-containing insulation Covil sold to his employer.

Soon thereafter, in one of the lawsuits against Covil in South Carolina state court, the plaintiffs moved for appointment of a receiver. On November 2, 2018, the state court [(the "Receiver Court")] appointed a receiver [(the "Receiver")] to administer Covil's assets.

Four days later, on November 6, 2018, Zurich brought the instant lawsuit in this Court against Covil, other insurers who may provide coverage to Covil, the Finch estate, and several North Carolina citizens who are claimants against Covil or the personal representatives of claimants in asbestos suits in North Carolina federal courts. [(Docket Entry 1 (the "Complaint").)] The [C]omplaint, as well as several counterclaims and cross[-]claims filed by insurers, seeks declarations limiting and apportioning among the insurers their obligations, if any, to cover Covil's defense costs and indemnify Covil for the Finch [J]udgment and potential future judgments relating to its sale of asbestos.

Zurich Am. Ins. Co. v. Covil Corp., No. 1:18-CV-932, 2019 WL 3205676, at *2 (M.D.N.C. July 16, 2019) (unpublished) (internal citations, footnote, and italics omitted). As relevant here, Sentry, USF&G, and TIG Insurance Company ("TIG") (another entity named as a defendant by Zurich) filed cross-claims against Covil.

2

(See Docket Entry 10, ¶¶ 90-113; Docket Entry 12, ¶¶ 73-99; Docket Entry 19 at 14-15, ¶¶ 35-43.)

In answering the Complaint and the foregoing cross-claims, Covil asserted counterclaims against Zurich and cross-claims against Sentry, USF&G, TIG, and Hartford Accident and Indemnity Company ("Hartford"), "each of [which] issued general liability policies to Covil" (Docket Entry 155, ¶ 109). (Id., ¶¶ 99-176.) More specifically, Covil alleged:

1) that Sentry, Zurich, and USF&G engaged in unfair and deceptive practices by failing to act reasonably and in good faith in connection with the Finch Action, in violation of North Carolina General Statute Section 75-1.1 (id., ¶¶ 126-32);

2) that Zurich and USF&G breached their legal duties as insurers (id., ¶¶ 134-35) and demonstrated "bad faith by . . . [, a]mong other things, . . . failing or refusing to resolve the Finch [Action] within their policy limits; by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Finch [Action], even though liability had become reasonably clear; by allowing Covil to receive an adverse verdict of $32,700,000 in the Finch [Action]; by compelling their insured to engage in litigation to recover amounts due under the policies by failing to make any reasonable offers; by failing to protect the interests of Covil and its claimants and creditors" (id., ¶ 139 (italics omitted));

3

3) that the foregoing breach by Zurich and USF&G subjects them to punitive damages (id., ¶¶ 142–50); and

4) that "Sentry, Zurich, and USF&G . . . breached their contracts of insurance by, among other things[,] (i) failing to resolve the Finch [Action] within policy limits; (ii) failing or refusing to pay in full the Finch [Judgment]; (iii) failing properly to treat claims as operations claims not subject to an aggregate limit of liability; and (iv) failing to protect the interests and rights of the claimants against Covil" (id., ¶ 158 (italics omitted)).

Covil further sought declaratory relief against Zurich, Sentry, USF&G, TIG, and Hartford and lodged a third-party demand against Penn National Insurance Company, all of which concerns the policy periods and limits of coverage issued by the foregoing insurers. (See id., ¶¶ 162–76.) Finally, Covil requested a declaratory judgment stating that (i) "any judgment obtained against Covil in a Covil asbestos suit be limited to all sums that may be collected from . . . Zurich, Sentry, USF&G, TIG, and Hartford, individually or collectively" (id., ¶ 179), (ii) "punitive or exemplary damages are not awardable against the Receiver or the Receiver acting on behalf of Covil pursuant to South Carolina Code § 15-65-10" (id.), and (iii) "any judgment obtained against Covil that is or may be subject to an aggregate limit of any insurance policy or policies issued to Covil must

4

fairly and equitably take into account such other judgments that may be outstanding at the time of such judgment" (id.).

The following week, Sentry filed a stipulation (Docket Entry 157) ("the Stipulation") between Sentry and Covil clarifying that (i) Sentry lacked a "dut[y] to defend and to indemnify Covil in the [Finch] Action[]" (Docket Entry 155, ¶ 67; see also Docket Entry 157, ¶ 2), (ii) Sentry bore no liability for the Finch Judgment (Docket Entry 157, ¶ 3), (iii) Covil's unfair and deceptive practices claim, as to Sentry, "does not include any conduct in connection with the Finch [A]ction" (id., ¶ 4 (italics omitted)), (iv) Covil's breach-of-contract claim "is dismissed as to Sentry only and with prejudice" (id., ¶ 5), and (v) Covil sought no declaratory relief as to Sentry's obligation to pay the Finch Judgment (id., ¶ 6).

Thereafter, Covil entered into settlement agreements (collectively, the "Settlement Agreements") with all of the entities against whom Covil had lodged cross-claims except for USF&G. (See Docket Entries 260 (indicating settlement between Covil and TIG), 261 (same, as to Hartford), 270 (same, as to Sentry), 375 (same, as to Zurich (the "Zurich Settlement")).) The Court (per Judge Eagles) granted the motions to dismiss that the parties filed in connection with the foregoing settlements. (Docket Entries 264, 265, 272, 377.)[1] During that same period, the

---

1  On each occasion, the Court dismissed the claims without
(continued...)

Court ruled on several motions for summary judgment (Docket Entries 206, 209, 211, 214), which presented, inter alia, the issue of "how to allocate a loss occurring over time and over multiple insurance policy periods and uninsured periods between and among the insurance companies and the insured" (Docket Entry 334 at 20). The Court awarded partial summary judgment to Zurich and USF&G on that issue, denied the same to Covil, and dismissed all other declaratory-judgment claims (over which the Court declined to exercise subject-matter jurisdiction). (Id. at 28–29.) Finally, at various times since the filing of the Complaint, some parties have filed stipulations indicating the dismissal of certain claims. (Docket Entries 47, 147, 300.) At bottom, after a lengthy and somewhat complicated procedural history, only Covil's (non-declaratory) cross-claims against USF&G remain for consideration. (See Docket Entry 361 (describing narrowed claims and granting motion to reliang Covil as plaintiff).)

The instant dispute arose when USF&G attempted to obtain from Covil copies of the Settlement Agreements. (See Docket Entry 399; see also Docket Entry 400 (supporting memorandum).) During discovery, USF&G requested that Covil "[i]dentify any and all payments [the Receiver] ha[d] received in [his] capacity as appointed Receiver for Covil, including without limitation,

    1(...continued)
prejudice. The parties later requested dismissal with prejudice (Docket Entries 307, 316, 365, 383), which the Court likewise granted (Docket Entries 327, 328, 370, 386).

payments relating to[] (a) this Action and (b) any Underlying Action." (Docket Entry 400-1, ¶ 8.) Covil (i) objected "to the extent that [such interrogatory] assumes facts not in evidence and seeks information not reasonably calculated to lead to the discovery of admissible evidence" (id.), and (ii) responded that "[t]he Receiver has not received any payments in his capacity as Receiver to date" (id.).

In addition, USF&G asked that Covil produce "[a]ny and all contracts [the Receiver] ha[d] entered into as Receiver for Covil" (Docket Entry 400-2, ¶ 10) and "[a]ny and all Documents relating to any and all payments [the Receiver] ha[d] received in [his] capacity as appointed Receiver for Covil or in any way relating to this Action and any Underlying Action" (id., ¶ 18). In response to the former, Covil objected to the request as harassing, challenged the relevance of the information sought, and asserted both attorney-client privilege and work-product protection. (Id., ¶ 10.) As to the latter request, after objecting based on relevance, ambiguity, and breadth, Covil reiterated that "[t]he Receiver ha[d] not received any payments in his capacity as Receiver to date." (Id., ¶ 18.)

Covil tendered the foregoing responses in January 2020 (Docket Entry 400-1 at 12; Docket Entry 400-2 at 16); the settlements occurred between March 2020 (Docket Entries 249-1 (Hartford), 249-2 (TIG), 269 (Sentry)) and January 2021 (Docket Entry 374-1

7

(Zurich)).  Covil never supplemented its discovery responses to reflect the settlements.  (<u>See</u> Docket Entry 400 at 4.)

When the parties exchanged emails in April 2021 concerning USF&G's request that Covil produce the Settlement Agreements (<u>see</u> Docket Entries 400-3, 400-4), Covil refused, noting that (i) the Receiver Court had sealed the Settlement Agreements, (ii) the Settlement Agreements remained confidential, (iii) TIG, Hartford, and Sentry bore no responsibility for the Finch Judgment (such that the agreements with those entities lack relevance to the remaining claims), and (iv) USF&G had delayed in seeking to obtain the Zurich Settlement in the Receiver Court.  (<u>See</u> Docket Entry 400-4 at 2.) The parties failed to resolve their dispute by means of a telephonic "meet and confer" conference on April 21, 2021.  (Docket Entry 400 at 18.)  Accordingly, USF&G has sought an order compelling "[Covil] to produce the [S]ettlement [A]greements . . . subject to the terms of the protective order entered in this action" (<u>id.</u> at 15; <u>see also</u> Docket Entry 203 (referenced protective order)).  Covil opposed the Motion (Docket Entry 405), and USF&G replied (Docket Entry 407).

<strong><u>DISCUSSION</u></strong>

**I. Relevant Standards**

**A. The Scope and Conduct of Discovery**

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants."  Fed. R. Civ. P.

8

26 advisory committee's notes, 1983 Amendment. Under Federal Rule of Civil Procedure Rule 26 ("Rule 26"),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The parties and the [C]ourt have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment; see also id. (explaining that Rule 26 imposes an "obligation o[n] the parties to consider the[ proportionality] factors in making discovery requests, responses, or objections"). In turn, relevancy "essentially involves a determination of how substantively the information requested bears on the issues to be tried." Mills v. East Gulf Coal Preparation Co., 259 F.R.D. 118, 131 (S.D.W. Va. 2009) (internal quotation marks omitted). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Nevertheless, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery] . . . ." Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004);

9

see also Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."). Moreover,

> the [C]ourt must limit the frequency or extent of discovery otherwise allowed by the[ Federal Rules of Civil Procedure (the "Rules")] or by local rule if it determines that:
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "District courts enjoy nearly unfettered discretion to control the timing and scope of discovery." Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996); accord Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012) (observing that "[d]istrict courts are afforded broad discretion with respect to discovery").

"The Rules provide a number of discovery devices, including [interrogatories and] requests for production of documents . . . ." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 240 (M.D.N.C. 2010). Federal Rule of Civil Procedure 33 ("Rule 33") requires that a litigant answer each interrogatory "separately and fully in writing under oath," Fed. R. Civ. P. 33(b)(3), and "state[] with specificity," Fed. R. Civ. P. 33(b)(4), any grounds for objection. In turn, Federal Rule of Civil Procedure 34 ("Rule

10

34") requires that a litigant's response to a request for production of documents "must either . . . permit[ inspection] as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

## B. The Duty to Supplement

Rule 26 imposes a continuing obligation on litigants, such that

> [a] party . . . who has responded to an interrogatory[ or] request for production . . . must supplement or correct its . . . response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1)(A). Alternatively, courts may order supplementation. Fed. R. Civ. P. 26(e)(1)(B). The duty to supplement continues beyond the close of discovery. See Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc., No. 1:05CV955, 2011 WL 2470460, at *2 n.3 (M.D.N.C. June 20, 2011) (unpublished); accord Medline Indus. v. C.R. Bard, Inc., No. 17C7216, 2021 WL 809734, at *3–4 (N.D. Ill. Mar. 3, 2021) (unpublished); Weare v. Bennett Bros. Yachts, No. 7:17-CV-155, 2019 WL 12267845, at *4 (E.D.N.C. June 12, 2019) (unpublished); Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc., 272 F.R.D. 350, 358 (W.D.N.Y. 2011). "Excluding documents created after the close of discovery from the duty to supplement would encourage parties to wait until after discovery has closed to create

11

documents containing potentially damaging information." <u>Iweala v.</u> <u>Operational Techs. Servs., Inc.</u>, Civ. Action No. 04-02067, 2010 WL 11583114, at *2 (D.D.C. Apr. 13, 2010) (unpublished).

If a party fails to supplement as required, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[T]he automatic sanction of exclusion provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." <u>Southern States Rack & Fixture, Inc. v.</u> <u>Sherwin-Williams Co.</u>, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (internal quotation marks omitted). However, as discussed in more detail in the following subsection, certain circumstances may call for remedies other than exclusion. <u>See Star Direct Telecom</u>, 272 F.R.D. at 358 (noting that Rule 26(e) provides for court-ordered supplementation and rejecting argument that exclusion represents sole remedy for Rule 26(e) violation); <u>see also</u> Fed. R. Civ. P. 37 advisory committee's notes, 1993 Amendment, Subdivision (c) ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.").

## C. Motions to Compel

Although Rule 26 allocates "primary responsibility for conducting discovery" to litigants, Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g), it likewise "acknowledges the reality that [the discovery process] cannot always operate on a self-regulating basis," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (b). "The Rules thus afford a number of mechanisms for litigants to seek judicial intervention in discovery disputes, including authorizing '[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection.'" Kinetic Concepts, 268 F.R.D. at 243 (quoting Fed. R. Civ. P. 37(a)(3)(B)). Rule 37 allows such a motion when "a party fails to answer an interrogatory submitted under Rule 33," Fed. R. Civ. P. 37(a)(3)(B)(iii), or when "a party fails to produce documents . . . as requested under Rule 34," Fed. R. Civ. P. 37(a)(3)(B)(iv). The party opposing discovery generally bears the burden on a motion to compel. Kinetic Concepts, 268 F.R.D. at 243-44 (collecting cases).

Furthermore, as mentioned above, Rule 37 provides multiple avenues of relief for a Rule 26(e) violation, some of which a litigant must seek by motion. In that regard, Rule 37 authorizes sanctions "[i]n addition to or instead of [exclusion]," Fed. R. Civ. P. 37(c)(1), which "apply when a party fails to disclose

13

evidence helpful to an *opposing* party," <u>Southern States</u>, 318 F.3d at 595 n.2; <u>see also</u> 7 Moore's Federal Practice, Civil § 37.60[2][b] (explaining that alternative sanctions "provide courts with effective means to discipline parties who might be tempted not to disclose evidence that would be helpful to their opponents"). In that regard, Rule 37 expressly empowers a court to fashion "other appropriate sanctions," Fed. R. Civ. P. 37(c)(1)(C), to include

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part; [and]
> (vi) rendering a default judgment against the disobedient party . . . .

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi); <u>see also</u> Fed. R. Civ. P. 37(c)(1)(C) (approving of "any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)")). The Court may award such relief "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 37(c)(1).

**II. Analysis**

**A. Timeliness**

USF&G has argued that Covil must produce the Settlement Agreements in accordance with Rule 26(e). (Docket Entry 400 at

5-6.)  In response, Covil has contended that the Motion merits denial because USF&G failed to move for relief before the discovery deadline. (Docket Entry 405 at 3-4 (noting closure of discovery on August 10, 2020).)  In reply, USF&G has maintained that (i) a litigant properly may file a motion to compel after the close of discovery (Docket Entry 407 at 3-4), (ii) USF&G's requests during discovery encompassed the Settlement Agreements (id. at 3), (iii) Covil possesses an ongoing obligation to supplement its discovery responses (id.), and (iv) USF&G acted prudently in seeking other means of disclosure before filing the Motion (id. at 5-6).

Although a party generally must file a motion to compel before the close of discovery, see RDLG, LLC v. RPM Group, LLC, No. 1:10cv204, 2012 WL 3202851, at *1 (W.D.N.C. Aug. 6, 2012) (unpublished), that rule merits less rigid application in the context of motions asserting Rule 26(e) violations, see generally Lane v. Lucent Techs., Inc., No. 1:04CV789, 2007 WL 2079879, at *3 (M.D.N.C. July 13, 2007) (unpublished) ("[Rule 37] allows a court to establish a reasonable time for a party to file [a] motion [to compel].").  Indeed, "Rule 26 imposes no requirement, express or implied, that a motion to compel precede a court's imposition of a sanction . . . for failure to supplement . . . ." Alldread v. City of Grenada, 988 F.2d 1425, 1436 (5th Cir. 1993).  Other courts have granted relief for Rule 26(e) violations even when parties first raised the issue after the close of discovery.  See, e.g., Star

15

Direct Telecom, 272 F.R.D. at 358-59 (deeming motion to compel supplementation "not untimely because the duty to supplement continues even following the close of discovery" and ordering supplementation); Iweala, 2010 WL 11583114, at *1, 3 (ordering supplementation upon consideration of motion to compel filed more than four years after close of discovery).

Here, because the Motion relates to Rule 26(e) supplementation, an obligation that continues after the close of discovery, such deadline does not render the Motion untimely. Although USF&G became aware of three of the four Settlement Agreements (all but Zurich's) during the discovery period (see Docket Entries 260, 261, 270 (Covil's motions to dismiss from March 2020 indicating settlement with TIG, Hartford, and Sentry, respectively)), Covil bore the obligation to supplement its discovery responses even absent a motion by USF&G, Wright v. Touhy, No. 97C742, 2003 WL 22439864, at *4 (N.D. Ill. Oct. 28, 2003) (unpublished) ("The duty to supplement . . . lingers on without subsequent solicitation."). As concerns the Zurich Settlement, which occurred in January 2021 (several months after the close of discovery), Covil has failed to show that USF&G delayed in seeking relief (see Docket Entry 405 at 4); moreover, USF&G has proffered reasonable explanations for waiting until April 2021 to file the Motion (see Docket Entry 407 at 5-6). Accordingly, under the circumstances, the Court deems the Motion timely.

16

**B. Relevance**

In seeking to obtain the Settlement Agreements, USF&G has asserted its entitlement "to set off any damages by the amounts of any previous settlements between [Covil] and other responsible parties." (Docket Entry 400 at 6.) In light of its corresponding burden "to show that [Covil] has received settlement consideration from another responsible party" (id. at 7), USF&G has maintained that "Covil cannot prevent USF&G from presenting such evidence by withholding this information prior to trial" (id.). Per USF&G, the four Settlement Agreements remain relevant to "the issue [of] whether Covil received compensation in exchange for a release that covered claims relating to the Finch [J]udgment" (id. at 13 (italics omitted); see also Docket Entry 407 at 8-9). Additionally, USF&G has invoked the North Carolina rule foreclosing duplicative recoveries and noted that disclosure would increase the likelihood of settlement. (Docket Entry 400 at 8-9.) Conversely, Covil has resisted disclosure, arguing that the Settlement Agreements with TIG, Hartford, and Sentry bear no relevance "because they do not allocate funds to disputes arising out of Zurich's or USF&G's conduct in [the Finch Action]" (Docket Entry 405 at 1).

"Discovery under the [] Rules . . . is broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003); see also OptoLum,

17

<u>Inc. v. Cree, Inc.</u>, No. 1:17CV687, 2018 WL 6834608, at *4 (M.D.N.C. Dec. 28, 2018) (unpublished) ("[N]otwithstanding the limitations [of Rule 26(b)(1) and (b)(2)(C)], 'discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted.'") (internal brackets omitted) (quoting <u>Carefirst</u>, 334 F.3d at 402). In the context of motions to compel, courts have allowed non-settling parties to obtain settlement agreements between other litigants when such agreements relate to the issue of damages and the potential for a setoff. <u>See, e.g.</u>, <u>Barclay v. Gressit</u>, No. 2:12-cv-156, 2013 WL 3819937, at *3 (D. Me. July 24, 2013) (unpublished) ("Courts have readily discerned the relevance to a non-settling joint tortfeasor of information regarding a settlement agreement between a plaintiff and a settling joint tortfeasor when, pursuant to applicable state law, the non-settling defendant is entitled to a setoff of the settlement amount from any verdict in favor of the plaintiff . . . .").

Here, whether the Settlement Agreements qualify as relevant depends (at least in part) on the substantive law giving rise to "any party's claim or defense," Fed. R. Civ. P. 26(b)(1). <u>See</u> <u>Barclay</u>, 2013 WL 3819937, at *3 (referencing, in assessing relevance, "<u>applicable</u> state law" (emphasis added)). However, neither USF&G nor Covil has confronted the choice-of-law issue (at least in connection with the Motion). (<u>See</u> Docket Entry 400 at 6-8 & n.5 (relying on North Carolina law without discussion of choice-of-law principles); Docket Entry 405 at 5-7 (focusing solely on

18

scope of Settlement Agreements); see also Docket Entry 405 at 4-6 (invoking North Carolina law as to (statutory) "deceptive trade practices" claim without mentioning law applicable to bad-faith and breach-of-contract claims).) Given the lack of guidance from the parties and their apparent agreement that North Carolina law governs (at least some of) Covil's claims and USF&G's defenses, the Court assumes, at this stage, that North Carolina substantive law applies.[2]

Under North Carolina law, Covil bears the burden to prove its damages in order to recover in connection with any of its remaining claims against USF&G. See Walker v. Branch Banking & Tr. Co., 133

---

        2    "A federal court exercising diversity jurisdiction must apply the choice[-]of[-]law rules of the state in which it sits." Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 100 (4th Cir. 2013). When initiating the original declaratory-judgment action, Zurich invoked this Court's diversity jurisdiction (Docket Entry 1, ¶ 12), and Covil has alleged that complete diversity exists between itself and USF&G (see Docket Entry 155, ¶¶ 99, 102). As far as Covil's bad-faith claim, "North Carolina recognizes bad faith refusal to settle an insurance claim as a tort . . . [and] uses the law of the situs test to determine the choice of law for tort claims." Martinez v. National Union Fire Ins. Co., 911 F. Supp. 2d 331, 336 (E.D.N.C. 2012). Regarding Covil's contractual claim, "[u]nder North Carolina's choice-of-law rules, a contract is governed by the law of the place where the contract was made." Sager v. Standard Ins. Co., No. 5:08-CV-628, 2011 WL 13253913, at *5 (E.D.N.C. Aug. 26, 2011) (unpublished) (internal quotation marks omitted). Based on the Motion and associated briefing, the Court discerns no basis to apply the substantive law of a jurisdiction other than North Carolina. Even if another state's law governed one or more of Covil's claims, that circumstance matters only if some difference exists between that jurisdiction's law and North Carolina law which would affect the outcome of the Motion, see Perini/Tompkins Joint Venture, 738 F.3d at 101. The possibility of some other law governing and such law altering the outcome appears unlikely.

N.C. App. 580, 585, 515 S.E.2d 727, 730 (1999) (discussing plaintiff's burden to prove damages caused in context of unfair and deceptive trade practices claim); State Props., LLC v. Ray, 155 N.C. App. 65, 76, 574 S.E.2d 180, 188 (2002) ("The party seeking damages bears the burden of proving them in a manner that allows the fact-finder to calculate the amount of damages to a reasonable certainty."). Furthermore, "North Carolina recognizes the common law principle of 'one recovery' for each injury, even where the legislature has authorized damages that are punitive in character." Ferris v. Haymore, 967 F.2d 946, 958 (4th Cir. 1992) (internal citation omitted) (citing N.C. Gen. Stat. § 1B-4). In particular,

> [w]hen a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . [,] it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater . . . .

N.C. Gen. Stat. § 1B-4. "Nonsettling tortfeasors, however, are entitled to a setoff only for damages that are awarded for the same injury for which the settling defendants compensated the plaintiff." Zivitz v. Greenberg, 279 F.3d 536, 539 (7th Cir. 2002) (interpreting materially identical provision of Illinois law). Although the foregoing statute applies only to tort claims, similar concepts prevent double recovery in North Carolina contract actions. See Duke Univ. v. St. Paul Mercury Ins. Co., 95 N.C. App. 663, 681, 384 S.E.2d 36, 47 (1989).

20

To determine whether one (or more) of the Settlement Agreements potentially concerns Covil's damages and the availability of a setoff, the Court considers the nature and scope of Covil's claims as well as the (purported) reach of the Settlement Agreements. As mentioned previously, as to Zurich and USF&G, Covil alleged, inter alia, "unfair and deceptive acts or practices in violation of [North Carolina General Statute Section] 75-1.1" (Docket Entry 155, ¶¶ 127; see also id., ¶¶ 126-32) and asserted claims for bad faith (id., ¶¶ 133-41), punitive damages (id. ¶¶ 142-50), and breach of contract (id. ¶¶ 151-61). As to TIG, Hartford, and Sentry,[3] Covil sought only declaratory relief (see Docket Entry 155, ¶¶ 162-76), which the Court (per Judge Eagles) denied at summary judgment (see Docket Entry 334 at 29). In other words, TIG, Hartford, and Sentry never bore potential liability for the only claims that remain for consideration, those relating to the Finch Action. (See Docket Entry 361 at 1 (identifying primary issue, after summary judgment, as "[Zurich's and USF&G's] conduct in handling the Finch negotiations and trial" (italics omitted)); see also Docket Entry 405 at 2 ("[Covil] . . . never sued TIG or Hartford for bad faith.").) Although USF&G has maintained that "[Covil] sued [TIG, Hartford, and Sentry] in this action, and each had potential liability to Covil when they settled" (Docket Entry 400 at 11), such argument

---

3 As discussed, the Stipulation clarifies (and narrows) the claims that Covil lodged against Sentry. (See Docket Entry 157.)

ignores the fact that Covil excluded those insurers from the claims that USF&G faces and as to which USF&G wishes to explore a potential setoff (see id. at 11–14). The (limited) relief Covil sought against TIG, Hartford, and Sentry undermines USF&G's attempt to connect the Settlement Agreements with those entities to the distinct, Finch-related claims pending against USF&G.

Moreover, consistent with the scope of its counter- and cross-claims, Covil has insisted that "[t]he Sentry, TIG and Hartford [S]ettlement [A]greements do not assign any portion of settlement funds to the Finch lawsuit because those carriers do not bear the burden of the Finch lawsuit." (Docket Entry 405 at 5 (italics omitted).) Instead, Covil has stated that such "[S]ettlement[ Agreements] resolve the broad disputes . . . as to the general responsibilities arising from the insurance policies issued by [Sentry, TIG, and Hartford] to Covil" (id. at 5–6). In that regard, such settlements resulted in the creation of a qualified settlement fund ("QSF"). (Id. at 6.) The order from the Receiver Court approving those settlements explains that TIG, Hartford, and Sentry bought back the insurance policies they had issued to Covil and that the proceeds from those sales will fund asbestos-related suits involving Covil. (Docket Entry 405-1 at 11 ("As part of the Settlement Agreements, Hartford, TIG, and Sentry have offered to buy back any policies that it or its predecessors may have sold to Covil Corporation or Covil Corporation's predecessors. Doing so will allow the insurance assets to be

22

liquidated for use in the administration of the Receivership, and by the QSF for the defense of asbestos bodily injury suits and payment of asbestos bodily injury claims.").)[4]  As a result, the Court deems the TIG, Hartford, and Sentry Settlement Agreements irrelevant to the claims pending against USF&G (and the potential for a setoff in connection with those claims).

In contrast to its position with respect to the TIG, Hartford, and Sentry Settlement Agreements, Covil has acknowledged that the Zurich Settlement "account[s] for . . . claims related to any alleged bad faith on the part of Zurich related to the underlying Finch verdict" (Docket Entry 405 at 3 (italics omitted)).  Covil's sole challenge to the relevance of the Zurich Settlement depends on an agreement between USF&G and Zurich in the Finch Action.  (See id. at 7.)  More specifically, Covil has relied on an email communication documenting a cost-sharing agreement between Zurich and USF&G in the Finch Action, under which USF&G assumed 88.89% of the indemnity obligation.  (Id. (discussing Docket Entry 405-6 at

---

    4    Although USF&G has expressed its desire to "verify" such assertions via disclosure of the Settlement Agreements (Docket Entry 407 at 8), neither a litigant's "hunch," nor the mere "potential" that some undisclosed relevant evidence exists "is []sufficient to pull the requests within the realm of appropriate proportionality per Rule 26(b)(1)," Griggs v. Vanguard Grp., Inc., No. CIV-17-1187, 2019 WL 2524837, at *4 (W.D. Okla. June 18, 2019) (unpublished).  See also Anthony v. United States, 667 F.2d 870, 880 (10th Cir. 1981) ("A defendant may not use discovery as a fishing expedition.").

2).)[5]  However, Covil has provided no support for the notion that such agreement conclusively determines the extent to which the Zurich Settlement limits Covil's potential recovery from USF&G. (<u>See</u> <u>id.</u>)  Accordingly, insofar as USF&G may advocate for a different setoff calculation, the amount of the Zurich Settlement possesses relevance.

However, USF&G has failed to show that other parts of the Zurich Settlement bear on any pertinent issue in this action.  Even absent an objection by Covil on such grounds, the Court, independently, "must limit the . . . extent of discovery otherwise allowed by these [R]ules . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii).  <u>See</u> <u>Lawson v. Spirit AeroSystems, Inc.</u>, No. 18-1100, 2020 WL 1813395, at *6 (D. Kan. Apr. 9, 2020) (unpublished) (holding that Rule 26(b)(2)(C) imposes "independent ongoing obligation" on courts).  Upon exercise of its discretion in that regard, the Court discerns no basis to compel disclosure of the entire Zurich Settlement; USF&G remains entitled to discover only the amount of settlement and any provisions bearing on allocation of the settlement amount to the Finch

---

5  Although the email communication appears to originate from an employee of "Travelers" (Docket Entry 405-6 at 2), USF&G's corporate disclosure statement identifies The Travelers Companies, Inc., as a parent corporation (<u>see</u> Docket Entry 24 at 1).

Action.[6]  Given the conclusion as to the irrelevance of the other Settlement Agreements, the rest of this Memorandum Opinion will consider the parties' remaining arguments as to the Zurich Settlement only.

## C. Timing of Disclosure

USF&G has contended that Covil must produce the Zurich Settlement before trial, as USF&G must "present such evidence at trial, prior to judgment." (Docket Entry 400 at 7.)  According to Covil, the Motion remains premature under North Carolina law because "set-offs do not become relevant unless and until there is a verdict against USF&G" (Docket Entry 405 at 1).  In reply, USF&G has acknowledged that some courts have delayed disclosure until after a verdict on liability but has characterized pretrial disclosure as the preferable rule (favored by the majority of courts), noting that such practice promotes settlement and conserves judicial resources.  (See Docket Entry 407 at 6-8.)

"Under Rule 26(b), it is *relevance*[,] not *admissibility*[,] that drives the inquiry as to whether the information is discoverable." <u>Innovative Therapies, Inc. v. Meents</u>, 302 F.R.D. 364, 377 (D. Md. 2014) (internal quotation marks omitted).

---

6  The self-executing sanction of exclusion will apply to any information not disclosed by Covil, in the event that Covil later attempts to use such information to reduce the setoff amount.  <u>See</u> Fed. R. Civ. P. 37(c)(1).  For example, if USF&G argues that the entire amount paid under the Zurich Settlement qualifies for setoff, Covil could not point in rebuttal to any portion of the Zurich Settlement it failed to disclose to USF&G, unless it could satisfy an exception to Rule 37(c)(1)'s exclusion provision.

"Generally speaking, discovery as to damages is proper," _Federal Deposit Ins. Corp. v. Credit Suisse Sec. (USA) LLC_, No. 2:12-CV-784, 2016 WL 1047380, at *6 (M.D. Ala. Mar. 10, 2016) (unpublished) (internal quotation marks omitted), notwithstanding the fact that, "in many cases the issue of liability is tried separately from the issue of damages," 8 Charles Alan Wright, et al., _Federal Practice & Procedure_ § 2008.4 (3d ed. Apr. 2021 update). When "the issue of damages is truly separate from the question of liability," _id._, parties may seek to delay "discovery pertaining to damages . . . until after liability has been established," _id._ Applying the foregoing principles, most courts have allowed access to settlement agreements and other information bearing on damages during the regular course of discovery. _See Wilshire v. WFOI, LLC_, No. 4:13-cv-3614, 2015 WL 1643456, at *3 (D.S.C. Apr. 14, 2015) (unpublished) (collecting cases); _see also Federal Deposit Ins. Corp._, 2016 WL 1047380, at *6; _Barclay_, 2013 WL 3819937, at *4; _but see Beuster v. Equifax Info. Servs._, Civ. Action No. 2005-2816, 2006 WL 8456998, at *3 (D. Md. Sept. 1, 2006) (unpublished) (denying as premature motion to compel settlement agreement).

Here, Covil has not indicated that the Court (per Judge Eagles) previously approved a bifurcated discovery plan. (_See_ Docket Entry 405 at 4–5; _see also_ Docket Entries 109 (scheduling order), 129 (modification of scheduling order), 139 (modification of scheduling order), 145 (modification of scheduling order), 284

26

(modification of scheduling order), 321 (modification of scheduling order).)[7]  Instead, Covil has represented that North Carolina law renders USF&G's request premature, since a setoff becomes relevant only after a verdict establishing liability.  (See id.)  However, the notion that resolution of liability issues must precede resolution of damages issues holds true in virtually all cases and generally poses no obstacle to discovery on the latter issues (in the absence of bifurcation).  See 8 Charles Alan Wright, et al., Federal Practice & Procedure § 2008.4 (3d ed. Apr. 2021 update).  Because "[t]here has been no bifurcation of trial on liability and damages in this case," Barclay, 2013 WL 3819937, at *4, the Court declines to delay compelled production of information bearing on Covil's damages and the potential setoff.

**D. Confidentiality**

In response to Covil's (pre-Motion) position that the Receiver Court's seal of the Zurich Settlement and the confidentiality provisions contained therein justify Covil's nondisclosure (Docket Entry 400-4 at 2), USF&G has insisted that the protective order (Docket Entry 203) in this action adequately mitigates any such concerns.  (Docket Entry 400 at 10-11; see also Docket Entry 407 at 10-12.)  Nonetheless, Covil has maintained that the Receiver Court deemed the Zurich Settlement "confidential and placed [it] under seal" (Docket Entry 405 at 1) and further indicated that Zurich has

_____

    7  In fact, the Court (per Judge Eagles) denied bifurcation as to other aspects of the case.  (See Docket Entry 203.)

27

"object[ed] to any disclosure of the[ Zurich Settlement] to USF&G"
(<u>id.</u> at 7). Moreover, Covil has represented that "the Receiver[]
Court adjudicates *any* matters relating to the confidential
[S]ettlement [A]greements, meaning Covil cannot disclose the
[Zurich S]ettlement [] without the Receiver[] Court's approval."
(<u>Id.</u> at 8.) Replying to those contentions, USF&G has argued that
(i) Covil previously envisioned potential disclosure of the Zurich
Settlement (Docket Entry 407 at 10 (discussing Covil's position in
its motion to seal before the Receiver Court)), (ii) the Receiver
Court's continuing jurisdiction over the QSF does not deprive this
Court of authority to manage discovery in this action (<u>id.</u> at
10-11), and (iii) no settlement privilege protects the Zurich
Settlement from disclosure (<u>id.</u> at 11).

Turning first to Covil's refusal to produce the Zurich
Settlement in light of its confidential nature, "courts within the
Fourth Circuit have generally declined to recognize a federal
settlement privilege," <u>Townsend v. Nestle Healthcare Nutrition,
Corp.</u>, No. 3:15-cv-6824, 2016 WL 1629363, at *5 (S.D.W. Va. Apr.
22, 2016) (unpublished) (collecting cases). Accordingly,
settlement agreements remain discoverable to the extent they
possess relevance under Rule 26(b). <u>Levick v. Maimonides Med.
Ctr.</u>, No. 08CV03814, 2011 WL 1673782, at *2 (E.D.N.Y. May 3, 2011)
(unpublished). For that reason, "confidentiality provisions
inserted by parties into private settlement agreements do not
immunize those agreements from discovery." <u>Rocky Aspen Mgmt. 204</u>

LLC v. Hanford Holdings LLC, 394 F. Supp. 3d 461, 464 (S.D.N.Y.
2019). Here, the Court has deemed (part of) the Zurich Settlement
relevant (for discovery purposes). Covil has offered no reason why
the supposed confidentiality provision exempts that document from
otherwise applicable discovery rules. (See Docket Entry 405 at
7-9.)

To the extent Covil has suggested that the Receiver Court's
order approving (and sealing) the Zurich Settlement prohibits Covil
from any disclosure of the same, the text of the order does not
support that position. Sealing orders differ from gag orders. See
In re Sealing & Non-Disclosure, 562 F. Supp. 2d 876, 880 (S.D. Tex.
May 30, 2008) ("Judicial gag orders impinge upon freedom of speech
and press under the First Amendment, and must pass muster under
well-established constitutional case law. On the other hand,
sealed judicial orders conflict with the common law tradition of
public access to judicial proceedings, and are typically evaluated
under more flexible common law rules."). Importantly, "the evident
purpose of [a sealing] order is to limit public access to th[e]
records [subject to the seal], rather than to provide a shield to
a litigant to frustrate otherwise relevant discovery." Romano v.
SLS Residential, Inc., 298 F.R.D. 103, 110 (S.D.N.Y. 2014); see
also In re Murphy-Brown, LLC, 907 F.3d 788, 796 (4th Cir. 2018)
(observing that "gag orders in civil cases are quite rare").

Here, the Receiver Court granted a motion by Covil, the QSF,
and Zurich to maintain the Zurich Settlement under seal, after

concluding that "sealing the [Zurich S]ettlement [] is proper and necessary under Rule 41.1(c) of the South Carolina Rules of Civil Procedure." (Docket Entry 405-2 at 5.) The Receiver Court noted the lack of public interest in the specific terms of the Zurich Settlement and the potential harm that premature disclosure could cause. (Id. at 5–6.) In approving the Zurich Settlement, the Receiver Court referenced its "discretion to dispose of the Receivership's assets and direct disposition of those assets" and declared its "continuing jurisdiction over the QSF and all of its assets." (Id. at 7.) However, the Receiver Court never forbid Covil from revealing the terms of the Zurich Settlement and expressed no position on whether (or under what circumstances) disclosure could occur. (See id. at 2–10.)

In other words, the Receiver Court issued a sealing order, not a gag order. Covil's apparent willingness to produce the Zurich Settlement for in camera review (Docket Entry 405 at 9) undercuts its contention that the Receiver Court forbade disclosure in any form. "As [a] part[y] to this case, [Covil is] obliged to produce documents that are responsive to [USF&G's] discovery requests, regardless of [its] agreement with [Zurich], acceded to by the [Receiver C]ourt, to protect such information with a[ sealing order]." DAC Surgical Partners, P.A. v. United Healthcare Servs., Civ. Action No. H-11-1355, 2013 U.S. Dist. LEXIS 186292, at *8 (S.D. Tex. Dec. 16, 2013) (unpublished). Although the Zurich Settlement evidently required the approval of the Receiver Court

30

and thus differs in some respects from purely private settlement agreements, such judicial involvement derives from Covil's status as a dissolved corporation in receivership and does not entitle the Zurich Settlement to absolute protection from production in litigation.[8]   Allowing for limited disclosure under the circumstances protects Covil's and Zurich's privacy interests (to the extent possible) and affords respect for the Receiver Court's order while continuing to enforce Covil's discovery obligations under the Rules.

## **CONCLUSION**

Although USF&G filed the Motion after the close of discovery, the Motion qualifies as timely because the relief sought therein concerns Covil's ongoing obligation to supplement under Rule 26(e). In light of the scope of Covil's claims and breadth of the Settlement Agreements, only the Zurich Settlement qualifies as discoverable.  However, given the independent judicial duty to enforce the limitations of Rule 26(b)(1), the Court will order Covil to disclose only the amount of the Zurich Settlement and any provisions pertaining to apportionment of some or all of that amount to the Finch Action.  Although the setoff issue fully ripens after a verdict establishing liability, the Court declines to delay supplementation any further, particularly in light of the (non-

---

8  The Receiver Court asserted control over Covil's assets (to include Covil's insurance policies) and invoked its authority to supervise the Receiver's liquidation of such assets.  (See Docket Entry 405-3 at 9 & n.1.

bifurcated) discovery plan. Lastly, neither the confidential nature of the Zurich Agreement nor the Receiver Court's order approving of and sealing that document warrants non-disclosure under the circumstances.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 399) is **GRANTED IN PART**, such that, on or before June 25, 2021, Covil must serve a supplemental interrogatory response identifying payments received in the Zurich Settlement and must produce to USF&G any and all provisions of the Zurich Settlement which reveal the amount of settlement funds due Covil, as well as any provisions of the Zurich Settlement which concern any allocation of settlement funds to the Finch Action (including any provisions that Covil contends support allocation of any portion of such funds to matters other than the Finch Action).

This the 17th day of June, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
