**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NUMBER: 1:18-CV-932**

| | |
|---|---|
| COVIL CORPORATION, by and through its duly appointed receiver, Peter D. Protopapas,<br><br>*Plaintiff,*<br><br>v.<br><br>USF&G COMPANY,<br><br>*Defendant.* | **COVIL CORPORATION'S RESPONSE TO USF&G'S MOTION TO EXCLUDE LINDA MARTIN BARBER** |

## I. INTRODUCTION

Linda Martin Barber has been involved in the business of asbestos claims handling for more than forty years as an insurance company executive, counsel, and consultant for insurers, reinsurers, and policyholders. Her decades of specialized experience in this area will help jurors understand the custom and practice within the insurance industry as to how liability insurers, such as USF&G, manage asbestos claims and whether USF&G's handling of the *Finch* claim comported with industry practice.

This Court has recognized that the "jury will have to wrestle with whether USF&G's negotiation strategies were within normal bounds under the circumstances and motivated by appropriate recognition of Covil's interests in light of available coverage or whether its posturing and gamesmanship crossed the line to an unreasonable refusal to settle a valid claim within policy limits." ECF No. 373 at 6. Ms. Barber's specialized

experience will help the jurors to understand the "normal bounds under the circumstances" and where that "line" is located.

For these reasons, as discussed in detail below, Ms. Barber's testimony is admissible.

## II. FACTUAL BACKGROUND

USF&G does not dispute that Ms. Barber is a highly qualified and experienced expert in the field of asbestos claims handling. Ms. Barber has been involved with asbestos claims for more than forty years, including but not limited to serving as Managing Director of Navigant Consulting, Senior Vice President for Claims at International Insurance Company, and Vice President of the CIGNA Companies. Ex. 1, Barber July 10, 2020 Report, Ex. B (attaching her CV). She has extensive experience handling, defending, analyzing, valuing, reviewing, and reporting on asbestos claims for hundreds of asbestos defendants, as well as dozens of insurers and reinsurers. In addition, since forming her own consulting company, Ms. Barber has been accepted as an expert in 35 federal, state, and arbitration proceedings, and served as an arbitrator in 29 insurance or reinsurance disputes. Ex. 1, Barber July 10, 2020 Report, Ex. A at 2.

At trial, Ms. Barber will provide expert testimony to assist the jury as disclosed in her July 10, 2020 expert report:

***First***, Ms. Barber will establish the standard practice of asbestos claims handling in the insurance industry, including the duties of an insurer when the allegations of a complaint establish a potential for coverage. Ex. 1, Barber July 10, 2020 Report, ¶¶ 1–3. Specifically, she will explain that "[f]or those asbestos defendants left in cases with

plaintiffs who could prove exposure, painful disease, economic losses, and potentially punitive damages for knowing use or distribution of inherently dangerous products, substantial settlements [are] necessary to avoid multi-million-dollar verdicts[.]" *Id.* ¶ 1. She will also explain that "[w]hen dealing with potentially catastrophic claims, claims handlers are responsible for protecting the policyholder from verdicts in excess of applicable policy limits." *Id.* ¶ 3.

***Second***, Ms. Barber will opine that USF&G's failed to follow the standard practice of insurance claims handling in the *Finch* case. *Id.* ¶¶ 4–13. Specifically, USF&G knew that the *Finch* case against Covil presented a significant threat and that Covil was very likely to lose at trial.[1] Ms. Barber will opine that USF&G's decision to take the case to verdict even though Covil was the sole remaining defendant and lacked a strong defense at trial violated industry custom and practice. *Id.* ¶¶ 4–13. Ms. Barber will also opine that USF&G did not make a reasonable effort to respond to plaintiff's settlement demands in the *Finch* case. Instead, USF&G stonewalled and failed to protect its policyholder. *Id.* ¶ 13. Ms. Barber concludes that USF&G's conduct was contrary to the standard practice of asbestos claim handling by an insurer in the industry. *Id.* ¶ 14.[2]

[1] For example, as Ms. Barber explained, USF&G was "advised that it was a bad case, and that [its] policyholder was going to be the only defendant at trial, it was one of the only amphibole defendants, had no causation defense, had no expert witness to testify at trial, and was very likely to lose." *Id.* ¶ 14. Moreover, USF&G "had selected a novice attorney to defend [its] policyholder while plaintiff's counsel had won multi-million dollar verdicts in asbestos cases." *Id.*

[2] Ms. Barber also submitted an expert report, dated January 12, 2020, in the coverage phase of this case, providing her expert opinions with respect to classification of asbestos claims as product claims or operations claims. USF&G's motion to exclude focuses exclusively on Ms. Barber's July 10, 2020 Report. USF&G's motion only mentions Ms. Barber's

## III. ARGUMENT

### A. Legal Standard

As USF&G admits, "Generally, '[a]n expert's testimony is admissible under Rule 702 if it 'rests on a reliable foundation and is relevant.'" Mot. at 2 (citation omitted).

### B. Ms. Barber's expert opinions are admissible.

USF&G seeks to exclude Ms. Barber as an expert witness, arguing that (1) "summary narrative" testimony, (2) industry standards testimony, and (3) testimony that USF&G failed to meet industry standards is all inadmissible. These arguments lack merit. At best, USF&G's complaints go to the weight, not the admissibility, of the testimony.

#### 1. Ms. Barber does not offer "summary narrative" opinions, and her testimony is based on a thorough analysis of the documentation and pertinent testimony.

First, USF&G mischaracterizes Ms. Barber's mandatory disclosure of the facts upon which she relied to form her opinions as somehow improper "summary narrative" testimony. Mot. at 22. However, the opinions disclosed in Ms. Barber's expert report are

---

January 12, 2020 Report in a footnote (No. 4) and asserts that the classification of asbestos claims is irrelevant to the bad faith claims. USF&G, however, provides no argument or rationale supporting this erroneous assertion. USF&G's attempt to hide the unaggregated operations claims is relevant to several disputed issues, including whether (1) USF&G failed to provide complete information about policy limits to Finch's attorneys, (2) USF&G failed to clearly and accurately communicate its available limits to Finch's attorneys, (3) USF&G provided incorrect information with respect to its policy limits available for the *Finch* claim, and (4) USF&G withheld its policy limits. These issues are part of the unfair and deceptive trade practices claim. Ms. Barber's opinions disclosed in the January 12, 2020 Report will help the jury understand the underlying facts associated with that claim. Ex. 1, Barber July 10, 2020 Report, Ex. A ¶¶ 10–15.

not a simple "narration" of evidence; rather, the opinions detailed above illustrate her specialized analysis of the facts cited in her report based on her experience with asbestos litigation, insurance coverage, and the reporting and collection of asbestos claim data. Drawing conclusions from a set of facts based on extensive and specialized knowledge and experience is precisely how experts form reliable opinions. *In re E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, 345 F. Supp. 3d 920, 929 (S.D. Ohio 2015); *see also Houserman v. Comtech Telecommunications Corp.*, No. 2:19-CV-00644-RAJ, 2020 WL 7695695, at *3 (W.D. Wash. Dec. 28, 2020) ("[The expert's] conclusions are based on his analysis of the facts, which would certainly require a review or 'summarizing' of the evidence and application of his specialized knowledge and background. His opinions as an expert . . . would be helpful to the jury . . . .").

Second, USF&G asserts that Ms. Barber's opinions are unreliable because she did not review the specific record materials that USF&G would have cherry-picked for her. Mot. at 22–23. But USF&G provides *no* authority or rationale supporting this assertion. As disclosed in her expert report, Ms. Barber analyzed a wealth of documents and testimony before arriving at her opinions, including but not limited to the deposition transcripts of Jessica Dean, Trey Branham, William Silverman, and Daniel White, and numerous documents directly from Travelers' production sets. *See* Ex. 1, Exhibit D to Barber July 10, 2020 Report at 17–18 (identifying by bates number each and every Travelers document relied upon by Ms. Barber in forming her opinions).

Moreover, as Ms. Barber explained in her deposition, "In the world of insurance claims, documentation is critical, and the documentation here is lacking. The failure to

follow standard procedures is pretty evident, and *you just can't explain that away*." Ex. 2, Barber July Dep. 35:23–36:2 (emphasis added).. When asked directly why she did not review the specific materials urged by USF&G's lawyers, Ms. Barber stated that she "did not need their testimony to reach [her] conclusion" as a custom and practice expert. *See* Mot. at 23 (quoting Barber July Dep. at 35:8–12).

Similarly, USF&G argues that Ms. Barber's opinion concerning the Wall Templeton lawyers' handling of the *Finch* trial is unreliable because Barber did not review the full *Finch* trial transcripts. Mot. at 23–24. However, a review of the entire *Finch* trial transcripts was not necessary. Ms. Barber analyzed the deposition transcripts of both plaintiffs' counsel and defendant's counsel regarding the *Finch* trial and numerous correspondences regarding the *Finch* trial. *See* Ex. 1, Exhibit D to Barber July 10, 2020 Report. In addition, Ms. Barber asked specific factual questions about the conduct of the trial and was provided with answers and quotes from the trial transcripts. Ex. 2, Barber July Dep. 147:24–148:1. Thus, Ms. Barber's opinion is supported by sufficient documentation to render it trustworthy. USF&G cannot point to a single factual issue raised in any of the full trial transcripts that Ms. Barber failed to consider in reaching her opinions.

In addition, USF&G contends that Ms. Barber's opinions concerning the competence of William Silverman or Mark Wall (and their performance at the *Finch* trial) are outside the scope of Covil's final proposed verdict sheet filed on August 10, 2020. Mot. at 23. USF&G is mistaken. The Court's Supplemental Discovery Scheduling Order of April 8, 2020, ECF No. 284, allowed Covil to "suggest modifications to the wording for a

particular claim or issue at a later time," noting that "any issue/claim not identified in [its] proposed verdict sheet will be deemed abandoned." Covil included no additional claims or issues, within the meaning of the order, in its April 12, 2021 proposed verdict sheet. Ex. 3, April 12, 2021 Covil's Proposed Verdict Sheet.

The competence of William Silverman or Mark Wall is relevant to Issue 3 of the April 12, 2021 proposed verdict sheet, including but not limited to:

> (i) Did USF&G look out for its own interests and not Covil's interests in the way it handled the potential for settlement of Finch's claims?
>
> (t) Did USF&G use the *Finch* trial as an effort to teach Finch's attorneys a lesson?
>
> (u) Did USF&G use the *Finch* trial to prove a point to Finch's attorneys?
>
> (v) Did USF&G use the *Finch* trial for hidden motives for other asbestos cases?
>
> (w) Did USF&G have the desire to play tough with Finch's attorneys because of their actions in other cases against Covil?
>
> (z) Did USF&G disregard its duty to Covil in the *Finch* case to prove a point for other asbestos cases?

And Wall Templeton's performance is also relevant to Issue 3 of the April 12, 2021 proposed verdict sheet, including but not limited to:

> (a) Did USF&G fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement with Ann Finch when USF&G's liability to pay a part of the *Finch* claims had become reasonably clear?
>
> (b) Did USF&G fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement within policy limits?
>
> (i) Did USF&G look out for its own interests and not Covil's interests in the way it handled the potential for settlement of Finch's claims?
>
> (aa) Did USF&G fail to inform Covil of the possibility of an excess verdict?

For these reasons, Ms. Barber's testimony, based on a thorough analysis of the pertinent underlying documentation and testimony, is admissible.

**2. Ms. Barber's testimony regarding the custom and practice within the insurance industry as to how USF&G was supposed to handle asbestos claims is admissible.**

As explained above, Covil plans to call Ms. Barber to testify at trial to help educate the jury regarding the insurance industry custom and practice related to the management of complex asbestos litigation. *Supra* at 1. USF&G complains that "the basic background facts about asbestos claims handling are irrelevant to USF&G's liability." Mot. at 24. This assertion is without merit. Courts have repeatedly held that testimony about how insurance claims are managed and evaluated as an industry standard can be helpful to the jury in determining whether a claim was handled in bad faith. *See, e.g., Kraeger v. Nationwide Mut. Ins. Co.*, No. 95-7550, 1997 WL 109582 (E.D. Pa. Mar. 7, 1997); *see also Am. Mod. Home Ins. Co. v. Thomas*, No. 4:16 CV 215 CDP, 2018 WL 4404723, at *7 (E.D. Mo. Sept. 17, 2018).

Here, Covil alleges that USF&G acted in bad faith and breached its contractual duty to settle the *Finch* case within policy limits. As this Court has previously observed, "USF&G essentially points the finger at others and denies all responsibility." ECF No. 373 at 1. Accordingly, as the Court further explained, "[a] jury will have to wrestle with whether USF&G's negotiation strategies were within normal bounds under the circumstances. . . ." *Id.* at 6. The jury's understanding of the industry standards for proper

management and evaluation of asbestos claims will be helpful to the jury in determining whether USF&G handled the Finch claim in bad faith.[3]

USF&G's objection that Ms. Barber "misstates the law," Mot. at 24, is also mistaken. Ms. Barber's expert opinions do not provide any legal conclusions. Nor does her opinion "suggest" any "unqualified obligations," as USF&G asserts. Nonetheless, to the extent that USF&G believes Ms. Barber's analysis of the industry standard is merely incorrect, USF&G can cross-examine her at trial.

USF&G also contends that "the duties of an insurer when the allegations of a complaint establish a potential for coverage" are irrelevant to its liability. Mot. at 24–25. Yet basic background information can be helpful for the jury to discern bad faith conduct and unfair and deceptive trade practices, and the duties of an insurer under these circumstances, contractual and implied, are the bases of all relevant claims at issue. *See Karnofsky v. Massachusetts Mut. Life Ins. Co.*, No. 2:14-CV-949-PMD, 2016 WL 741285, at *2 (D.S.C. Feb. 25, 2016) (finding the expert testimony is "helpful to the jury as they seek to identify the applicable industry standards and determine whether they were violated in this case"); *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Grp.*, 343 F. Supp. 2d 989, 1015 (D. Kan. 2004) (allowing expert testimony regarding insurance industry

---

[3] USF&G also makes the passing objection that Ms. Barber offers *ipse dixit* opinion. Mot. at 24. USF&G, however, provides no explanation for this objection. It is undisputed that Ms. Barber is a qualified expert witness with forty-plus years of experience related to asbestos claims handling. She is allowed to base her opinions on her experience in the insurance industry. F.R.E. 702; *see also Am. Mod. Home Ins. Co.,* 2018 WL 4404723, at *7.

standards and practices and whether the defendant's conduct conformed to such standards); *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 926 (D. Colo. 2017) ("use of expert opinions to establish industry standards in [bad faith] cases is fairly common").

Similarly, USF&G argues incorrectly that Ms. Barber's opinions invade the province of the Court. Mot. at 25. But Ms. Barber's limited testimony only concerns the duties of an insurer under the industry standard, not under the law. Covil does not proffer Ms. Barber to opine on caselaw or to give any legal conclusion at trial.

USF&G also claims inaccurately that Ms. Barber's July 10, 2020 Report "says nothing" about "the duties of an insurer when the allegations of a complaint establish a potential for coverage." Mot. at 25. This is incorrect. Her report provides a list of duties and responsibilities applicable to insurers, such as USF&G, including:

> (a) determining the policyholder's history with asbestos products, available defenses, and coverage,
>
> (b) communicating with the policyholder, and other insurers,
>
> (c) retaining and managing outside defense counsel,
>
> (d) establishing case reserves, making payments, and maintaining records, and
>
> (e) resolving claims.

Ex. 1, Barber July 10, 2020 Report, ¶¶ 2–3.

Accordingly, Ms. Barber's testimony regarding insurance industry standards of care related to proper claims handling is admissible.

### 3. Ms. Barber's opinion that USF&G's handling of the *Finch* claim violated industry standard practices is admissible.

Finally, USF&G argues that Ms. Barber's opinion that USF&G's handling of the *Finch* claim is contrary to the standard practice of asbestos claim handling by insurers, *see* supra at 3, is unreliable. Mot. at 25–26. USF&G's assertion finds no basis in fact or law.

In her report, Ms. Barber identifies clearly the facts that form the basis of her conclusions, explains the standard practices USF&G should have followed based on her experience, and articulates the reasoning of her conclusions. *See, e.g.*, Ex. 1, Barber July 10, 2020 Report, ¶¶ 10–13. For example, in concluding that USF&G did not make a "reasonable effort to settle" the *Finch* claim, Ms. Barber explained that "[t]here is no indication that Travelers . . . ever offered the plaintiff more than $100,000 to resolve the case. . . . Travelers' failure to negotiate persisted despite the clear certainty that Finch would result in a substantial verdict." *Id.* ¶ 13. USF&G's assertion that Ms. Barber failed to review "the full record" belies the fact that it cannot point to anything in the record to challenge Ms. Barber's observation. *See also* ECF No. 373 at 4 (noting USF&G "never increased the low-ball settlement offer").

USF&G's citation to *McDaniel* is inapposite. In *McDaniel*, the district court excluded an expert's opinions where there was lack of sufficient *facts* to support the opinion. *McDaniel v. John Crane, Inc.*, No. 1:19CV359, 2021 WL 1111154, at *7 (M.D.N.C. Mar. 23, 2021). That is not the case here.

USF&G's reliance on *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 149 n.40 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 555 (2d Cir. 2016), is similarly misplaced. In that

case, the expert only "summarized a number of internal emails that appear to have been hand-picked." Here, unlike in *Adkins*, Ms. Barber analyzed voluminous documentation and deposition transcripts, as identified expressly by bates number in her Expert Report. Ex. 1, Exhibit D to Barber's July 10, 2020 Expert Report. Moreover, as noted above, USF&G does not identify any specific facts that Ms. Barber failed to consider and how such facts are critical to the reliability of her analysis. USF&G's citation to *United States v. Redlightning*, 624 F.3d 1090, 1112 (9th Cir. 2010), is similarly distinguishable. There, a proffered expert relied on statements made to him by counsel without pointing to any evidence in the record or other factors or data relied upon. That is not the case here.

USF&G further contends that Ms. Barber's opinion on the allocation of responsibilities between primary and excess insurers are unreliable and unnecessary. Mot. at 27–28. Her opinion on this topic is reliable because she applied her knowledge in the field of insurance to the facts of the case. The jurors are not "equally capable" of reaching the same conclusion because they lack the specialized knowledge about excess insurance and multiple coverages. Ms. Barber's limited testimony on this topic will only assist the jury understand and digest these complicated facts.

In addition, USF&G argues that Ms. Barber never articulates the content of these asserted standard practices or procedures with any specificity. It further contends Ms. Barber's opinion is conclusory. Mot. at 28. However, as mentioned above, Barber's report provides a list of duties and responsibilities of insurers with specificity. Ex. 1, Barber July 10, 2020 Report, ¶¶ 2–3. Since applying specialized knowledge to facts of the case is appropriate methodology, the opinion drawn from such analysis is not "conclusory."

*WellDyne*, cited by USF&G, does not support its position because that court ordered the district court to conduct a *Daubert* analysis "without suggesting an outcome of the analysis." *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019).

Finally, USF&G argues that Ms. Barber's opinion that USF&G did not make an effort to settle in "good faith" invades the province of the jury. Mot. at 29. This characterization of her expert opinion is mistaken. To be clear, Ms. Barber only concludes that "there is no evidence that the insurers made a reasonable effort to settle" the *Finch* claim. Ex. 1, Barber July 10, 2020 Report, ¶ 13. This is not a direct instruction to the jury to find USF&G liable. Ms. Barber only opines USF&G's actions deviated from the industry standard, not the legal standard. *See, e.g.*, *Am. Mod. Home Ins.,* 2018 WL 4404723, at *7 ("[experts] may offer opinion on whether [the insurer's] actions deviated from insurance industry customs and practices").

Accordingly, Ms. Barber's testimony that USF&G's handling of the Finch claim violated industry standard practices is admissible.

## IV. CONCLUSION

For the foregoing reasons, Covil respectfully requests that this Court deny USF&G's Motion *in limine* to Exclude Testimony of Covil's Expert Witness Linda Martin Barber.

Dated: June 21, 2021

/s/ Paul D. Coates
N.C. State Bar Number: 9753
Kenneth Kyre, Jr.
N.C. State Bar Number: 7848
Pinto Coates Kyre & Bowers, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: (336) 282-8848
Fax: (336) 282-8409
Email: pcoates@pckb-law.com
Email: kkyre@pckb-law.com

Brady Edwards
Paul Anton Zevnik
Nancy Patterson
W. Brad Nes
Jeffrey Raskin
Lauren McCulloch Semlinger
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 739-3000
Email: brady.edwards@morganlewis.com

***Attorneys for Covil Corporation, acting through Peter D. Protopapas, Receiver of Covil Corporation***

## **WORD COUNT CERTIFICATION**

Pursuant to LR 7.3(d), I hereby certify that the foregoing filing is less than 6,250 words (excluding caption and certificates of counsel) as reported by the word-processing software.

/s/ *Paul D. Coates*
Paul D. Coates

# CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2021, I served the foregoing Covil's Responses to USF&G's Motions to Exclude Linda Martin Barber on Defendant by emailing a copy to:

Reid C. Adams, Jr.
cal.adams@wbd-us.com
Jonathan R. Reich
jonathan.reich@wbd-us.com
Womble Bond Dickinson (US) LLP
Winston-Salem, NC
Attorneys for Defendant USF&G

Mary Beth Forshaw
mforshaw@stblaw.com
Andrew T. Frankel
afrankel@stblaw.com
Alan C. Turner
aturner@stblaw.com
Simpson Thacher & Bartlett LLP
New York, NY
Attorneys for Defendant USF&G

This 21st day of June, 2021.

/s/ Kenneth Kyre, Jr.
N.C. State Bar Number: 7848
Pinto Coates Kyre & Bowers, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: (336) 282-8848
Fax: (336) 282-8409
Email: kkyre@pckb-law.com
Attorney for Covil Corporation,
By and Through Its Duly-Appointed
Receiver, Peter D. Protopapas